# Appendix

# Declarations

07/09/2014 WED 17:57  [TX/RX NO 9430] ☑002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| TOMMY NGUYEN, PAULUS NIEKDAM, and LOC TRAN, Individually and on Behalf of All Others Similarly Situated, §§§§ | |
| Plaintiffs, § | CIVIL ACTION FILE NO. 3:13-cv-04689-D |
| V. §§ | |
| VERSACOM, LLC; MUHAMMAD AL-AMIN, Individually; AFREEN AL-AMIN, Individually | JURY TRIAL DEMANDED |
| Defendants. §§§§§ | |

### DECLARATION OF TOMMY NGUYEN

Tommy Nguyen, who having personal knowledge of the matters set forth below, declares and states the following:

1.   My name is Tommy Nguyen.  I am a named Plaintiff in the above-numbered and styled lawsuit.  I am over the age of 18 and am competent in all respects to make this declaration. I make this declaration based on my own personal knowledge, unless otherwise stated upon information and belief, which to the best of my knowledge, is true and correct.

2.   I am a resident of Tarrant County, Texas, and I was employed by Versacom, LLC ("Versacom") between 2007 and 2013.  Until January, 2013, I held the position of Field Wireless Technician.  I was classified as a non-exempt hourly employee throughout the time of my employment with Versacom.

3.   My duties as a Field Wireless Technician included installing, testing, maintaining, and repairing telecommunications equipment at various customer locations.

---

PAGE 02/03                    OFFICEMAX 1236                    6307719306          18:00   07/09/2014

07/09/2014 WED 17:57  [TX/RX NO 9430]  ⌧003

4.      Between November 26, 2010 and November 26, 2013, I worked for Versacom on various projects in Dallas, Texas, Oklahoma City, Oklahoma, Las Vegas, Nevada, and Chicago, Illinois.  My direct supervisor during those projects was either Loc Tran or Hoan Bui.

5.      Beginning in June, 2012, I worked on a project in Las Vegas for six months.  During the project, I was required to travel to Las Vegas and work seven days per week, and during that time I worked an average of 30 hours of overtime each week.

6.      Each week, I turned in a form denoting the amount of overtime I worked to my supervisor.  I was told by my supervisor that it was Versacom's policy not to pay overtime until the reported overtime was approved by someone at the corporate office.

7.      During the six months that I worked in Las Vegas, the overtime that I reported to Versacom was paid only one or two times.  Although I complained to someone in Versacom's payroll or accounting department about not being paid for the overtime that I worked, I was never told that my overtime was not approved or why my overtime was not paid.

8.      Based on my interactions with other field wireless technicians working with me in Las Vegas, Versacom refused to pay their overtime as well.

9.      Throughout my employment with Versacom, I and other field wireless technicians input our weekly hours worked into an excel spreadsheet at the end of each week.  This spreadsheet was sent to Versacom Headquarters by my supervisor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July ___8___ , 2014.

Tommy Nguyen

PAGE  03/03                    OFFICEMAX 1236                    6307719306                    07/09/14  18:00

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY NGUYEN, PAULUS NIEKDAM, and LOC TRAN, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION FILE NO. 3:13-cv-04689-D |
| V. | § § | JURY TRIAL DEMANDED |
| VERSACOM, LLC; MUHAMMAD AL-AMIN, Individually; AFREEN AL-AMIN, Individually | § § § § | |
| Defendants. | § | |

**DECLARATION OF PAULUS NIEKDAM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND § 216(b) NOTICE**

Paulus Niekdam, who having personal knowledge of the matters set forth below, declares and states the following:

1. My name is Paulus Niekdam. I am a named Plaintiff in the above-numbered and styled lawsuit. I am over the age of 18 and am competent in all respects to make this declaration. I make this declaration based on my own personal knowledge, unless otherwise stated upon information and belief, which to the best of my knowledge, is true and correct.

2. I am a resident of Tarrant County, Texas, and I was employed by Versacom, LLC ("Versacom") between May, 2012 and November, 2012. Until November, 2012, I held the position of senior field wireless technician. I was classified as a non-exempt hourly employee throughout the time of my employment with Versacom.

3. My primary duties as a senior field wireless technician included installing, testing, maintaining, and repairing telecommunications equipment at various customer locations. As a senior field wireless technician, I also had additional duties that included communicating with

**Declaration of Paulus Niekdam in Support of**
**Plaintiffs' Motion for Conditional Certification and § 216(b) Notice**                    Page 1

5

the customer, scheduling, and submitting to Versacom weekly hours worked for all field wireless technicians on my project.

4.      Between May, 2012 and November, 2012, I worked for Versacom on various projects in San Diego, California and Los Angeles, California.  My direct supervisor during those projects was Loc Tran.

5.      During the entire time that I worked for Versacom, I was required to travel to San Diego or Los Angeles and work six to seven days per week, and during that time I worked an average of twenty (20) to thirty (30) hours of overtime each week, but Versacom never paid me for more than 10 hours of overtime regardless of the actual number of hours worked over forty hours in a week.

6.      During one week, I and other field wireless technicians worked at a customer's site for twenty-four (24) hours straight in addition to our regularly scheduled hours, but Versacom only paid us for 10 hours of overtime that week.

7.      Each week, I submitted a spreadsheet to my supervisor that included the amount of overall hours and overtime hours that I and other field Wireless technicians worked in the San Diego and Los Angeles Market.  I was told by my supervisor that it was Versacom's policy not to pay overtime until the reported overtime was approved by someone at the corporate office.

8.      During the entire time that I worked for Versacom, I was never paid more than 10 hours of the twenty to thirty hours of overtime that I reported to Versacom each week. Although I complained to my supervisor about not being paid for the overtime that I worked, I was told that that there was nothing he could do because the "company paid what the company paid."

9.      I drove my personal vehicle to California from Texas while working for Versacom.  I was asked by a co-worker to store a piece of Versacom equipment in my vehicle

during off hours.  After finishing work one day, I stored my personal laptop, personal tools, and the Versacom equipment in my vehicle.  My vehicle was broken into overnight while it sat in the parking lot of my hotel.  Along with my personal property, the Versacom equipment was stolen. I reported the theft to the police, Versacom, and my personal automobile insurance company.

10.     Versacom refused to pay me for three weeks of wages unless my personal automobile insurance company paid Versacom $7,000 for the stolen equipment.  When I complained and asked to be paid for the work that I had already performed, Muhammad al-Amin, Versacom's general manager, sent me an email stating that I was financially responsible for the stolen equipment, and that until Versacom received a check from my insurance company, Verscom would hold the wages owed to me.  Although I never signed any document taking financial responsibility for the stolen equipment, Mr. al-Amin told me that it was company policy to hold my wages until Versacom was reimbursed for the stolen equipment by my personal automobile insurance provider.  My personal automobile insurance provider denied the claim, and Versacom never paid me for the three weeks of wages owed to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July ___3___, 2014.

_____
Paulus Niekdam

**Declaration of Paulus Niekdam in Support of**
**Plaintiffs' Motion for Conditional Certification and § 216(b) Notice**                    **Page 3**

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TOMMY NGUYEN, PAULUS NIEKDAM, and LOC TRAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>V.<br><br>VERSACOM, LLC; MUHAMMAD AL-AMIN, Individually; AFREEN AL-AMIN, Individually<br>Defendants. | CIVIL ACTION FILE NO. 3:13-cv-04689-D<br><br>JURY TRIAL DEMANDED |

## DECLARATION OF LOC TRAN IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND § 216(b) NOTICE

Loc Tran, who having personal knowledge of the matters set forth below, declares and states the following:

1.     My name is Loc Tran. I am a named Plaintiff in the above-numbered and styled lawsuit. I am over the age of 18 and am competent in all respects to make this declaration. I make this declaration based on my own personal knowledge, unless otherwise stated upon information and belief, which to the best of my knowledge, is true and correct.

2.     I am a resident of Tarrant County, Texas, and I held multiple jobs at Versacom, LLC ("Versacom") between October 1, 2007 and May 4, 2013. There were times during my employment that I did no work for Versacom because Versacom had no work for me to do. This mainly occurred from March, 2008 to September, 2008. Between December, 2009 and May 4, 2013, I worked continuously on different Versacom projects as a senior field wireless technician. Regardless of jobs held or duties assigned, I was classified by Versacom as a non-exempt hourly employee throughout my entire employment with Versacom.

3.      My primary duties as a field wireless technician included installing, testing, maintaining, and repairing telecommunications equipment at various Versacom customer locations.  As a senior field wireless technician, I also had additional duties that included communicating with the customer about specific project technical requirements and issues, scheduling work for other field wireless technicians, and submitting weekly hours worked and tasks completed for all field wireless technicians on my project.  Additionally, I provided supervisory and staffing support for other installation and integration projects for which Muhammed al-Amin promised to pay me a per site commission after completion of each site.

4.      Between October 1, 2007 and May 4, 2013, I worked for Versacom on various projects in Illinois, Nevada, California, Georgia, Texas, and Oklahoma.  My supervisors during those projects were Muhammad al-Amin, Soheli Sadeque, Tom Pierce, Doan Le, and Shaudra Skinner.  Throughout my employment with Versacom, Muhammad al-Amin was Versacom's general manager, and he had ultimate approval authority regarding staffing, conditions of employment, and overtime policy.  The documents attached hereto as exhibit 1 constitute a true and correct copy of excerpts from the Versacom's Employee Handbook which was provided to me during my employment with Versacom.

5.      During the entire time that I worked for Versacom, I was required to travel to different cities in Illinois, Nevada, California, Georgia, Texas, and Oklahoma, and I worked six to seven days per week.  Between December, 2009 and May, 2013, I worked an average of forty (40) to sixty (60) hours of overtime each week, but Versacom would frequently refuse to pay me for all of my overtime hours regardless of the actual number of hours I worked over forty hours in a week.

6.      As a senior field wireless technician, I was also responsible for reporting the hours worked by other field wireless technicians on my team to Versacom Headquarters' staff

for payroll processing and customer billing.  On July 18, 2011, I complained to Mr. al-Amin and his Versacom Headquarters staff about me and other field wireless technicians on my team not being paid for our reported overtime hours.  Versacom never paid me for all of the overtime hours that I worked during that project.

7.     Mr. al-Amin would frequently complain to me and other senior field wireless technicians about the number of overtime hours being worked without his prior written approval. On September 11, 2012, Mr. al-Amin directed his headquarters' staff to either stop paying overtime or cap the amount of overtime being paid.  Mr. al-Amin and my supervisors encouraged me and other field wireless technicians to stop reporting all of the overtime hours worked by our field teams.

8.     Even when Scott Spray, Versacom's H.R. Director, counseled Mr. al-Amin in August 2011 that if overtime hours were worked by technicians, Versacom was obligated to pay for each hour of overtime worked, Mr. al-Amin persisted in standing by Versacom's policy that overtime would not be paid unless it was pre-approved in writing.  Mr. al-Amin never disciplined me or anyone else on my team for working overtime without written pre-approval because when overtime was worked by me or my team, it was necessary to complete the work that Versacom assigned.

9.     While working for Versacom, I communicated frequently with other senior field wireless technicians about working conditions, Versacom compensation policy, and Mr. al-Amin's management style.  Furthermore, Mr. al-Amin frequently shared with me his thoughts about how labor costs for wireless field technicians should be managed.  Mr. al-Amin told me several times that he did not like paying wireless field technicians on an hourly basis because he believed that technicians would "very often" abuse it.

10.     In November, 2012, Mr. al-Amin, instituted an "all inclusive" daily pay rate on an installation and integration project in Chicago, Illinois.  Prior to the institution of this new compensation policy, field wireless technicians were reimbursed by Versacom for certain business expenses incurred while working on a project away from home such as lodging, parking, tolls, mileage, meals, etc.  As a way to reduce costs and avoid overtime, Mr. al-Amin insisted on implementing a compensation scheme that not only required field wireless technicians to pay Versacom business expenses out of their wages, but Mr. al-Amin's new pay scheme also required, by its very nature, me and other field wireless technicians to work overtime hours without compensation.

11.     Versacom did not require, request, or mandate that field wireless technicians being paid on a site or daily pay rate report or track the amount of actual hours worked on a daily basis.  The "time" tracking spreadsheet required by Versacom to be completed and submitted by me for the Central Region T-Mobile Project did not include a place on the spreadsheet for me or my team members to input their daily hours.  We were only allowed to report a daily "all inclusive" rate and any hours worked on tasks that were considered outside the scope of the work that Versacom assigned to our team.

12.     From December, 2009 to May, 2014, I submitted a weekly spreadsheet to Versacom headquarters that included tasks completed by each field wireless technician assigned to the project, the hours worked on that associated task (unless it was a site or daily "all inclusive" rate pay project), the out of scope hours, and mileage (unless it was a site or daily "all inclusive rate pay project).  I and other field Wireless technicians were frequently told that it was Versacom's policy not to pay overtime until the reported overtime was approved by someone at the corporate office.  Often this approval never came, and eventually, many of the field wireless

technicians (including me) stopped reporting all of the hours that we worked because we knew from experience that the overtime would not be paid or it would be capped at a certain amount.

13.     In August, 2011, I attempted to explain to Mr. al-Amin that it would be impossible to avoid overtime on the Atlanta, Ga installation and integration project due to the workload for that project. Out of frustration over Mr. al-Amin refusal to pay overtime for hours actually worked, I suggested that he set a max of 50 hours per week per technician instead of mandating that there is not to be any overtime worked without written pre-approval. I explained to Mr. al-Amin that my team had been working at least 10 hours per day, not including the time spent on reporting and documenting the completed work. Despite my attempted complaints and interventions, Mr. al-Amin insisted on denying overtime based on Versacom's written overtime policy. When other field technicians complained to me about not receiving overtime I would simply tell them that the "company paid what the company paid."

14.     In September, 2012, Mr. al-Amin sent an email to Soheli Sadeque and Tom Pierce, instructing them to "CAP OT at $1,500 per pay period." By this point most of the field wireless technicians had gotten the "message" not to report all of our overtime hours, but there were a few field technicians that were still reporting weekly overtime that Mr. al-Amin considered to be excessive, and he declared in that email that the overtime for "certain individuals" needed to stop immediately. Despite Mr. al-Amin's constant insistence that the overtime being reported was excessive, I am not aware of any field wireless technician that was disciplined for either falsely reporting excessive hours or for working overtime without receiving prior written approval. Mr. al-Amin simply directed Versacom's payroll staff to either cap or not pay the overtime.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 15, 2014.

_____
Loc Tran

# Exhibit No. 1

# Employee Handbook

## Of

## Policies, Procedures and Guidelines

**Issue Date: August 01, 2008**

VERSACOM000253

## COMPENSATION POLICIES

**General.** Versacom' compensation policy is to strive to pay wages that are competitive with those in the community and the industry, recognizing individual effort and contribution to the Company's success. The basis for an employee's compensation will be his or her knowledge, ability, scope of responsibilities and the demands of the job. Wage ranges are generally reviewed annually to maintain our competitive posture. Discussion of individual compensation details with another employee/contractor is strictly prohibited and may result in immediate termination without notice. Any type of time off is not paid during the probationary period and pay is deducted for the time-off.

**Overtime.** Overtime will be paid for only PRE-APPROVED hours in writing by two levels of management above you. Overtime pay is required for non-exempt employees who work 40 or more hours in a workweek, or as otherwise required by law (e.g., after 8 hours in a work day, in California). Paid time off that is not worked, such as holidays, vacation, is not counted as "hours worked" for the purpose of calculating overtime. Employees are not allowed to work overtime unless it has been approved in advance by a supervisor and his/her boss. Each employee's time entry should be accurately recorded to reflect all time actually worked. Under no circumstances should an employee work "off the clock," and any such request from a Versacom supervisor or customer should be reported to the Versacom Human Resources Department immediately.

**Recording Time.** All employees must keep accurate records of their work time, using the automated time entry system. Accurate and timely entries are crucial, as they form the basis for customer billing and, for non-exempt employees, your compensation. Your time should be electronically submitted to your supervisor by noon on Saturday, for each week in which any work was performed. Any employee who falsifies his or her own work time records will be subject to discipline up to and including immediate discharge from employment. Hourly billable employees will be paid only for client approved hours, other than holiday, sick and vacation hours.

**Pay Periods and Payroll Deductions.** Employees are paid, via paycheck or direct deposit, every other Friday. Versacom will have deducted amounts required by law, such as those for federal/state income tax, Medicare and social security (FICA), or ordered by a court, such as garnishment of wages. Versacom will also deduct amounts authorized by you in writing, such as for insurance premiums, 401(k) plan contributions and your purchases of discounted computers and other equipment.

If you believe there was an improper deduction of your pay, please report it to the Finance Department immediately so that any error can be promptly corrected or a proper deduction can be explained.

Versacom will not authorize advances on paychecks or loans to employees. If you cannot pick up your paycheck, you may send a representative who must present your written authorization

# Notice and Consent Form

<u>**IMPORTANT NOTIFICATION TO POTENTIAL CLASS MEMBERS**</u>

**TO:**      **ALL CURRENT AND FORMER VERSACOM, LLC FIELD WIRELESS TECHNICIANS WHO WERE EMPLOYED BETWEEN NOVEMBER 26, 2010 AND _____, 2014.**

**FROM:**    **LU PHAM – ATTORNEY AT CANTEY HANGER, LLP**

**RE:**      **RIGHT TO JOIN A LAWSUIT SEEKING RECOVERY OF UNPAID WAGES AND OVERTIME COMPENSATION**

**DATE:**    **AUGUST ___, 2014**

## 1.  PURPOSE OF NOTICE

The purpose of this notice is to inform you that a lawsuit has been filed against Versacom, LLC ("Versacom") for unpaid overtime wages and that you may be eligible to join this suit.  You may be able to participate in this lawsuit because you potentially are similarly situated to the individuals who initially brought the lawsuit.  This notice discusses the effect that this lawsuit may have on your rights and gives instructions on how to participate should you choose to do so.

## 2.  DESCRIPTION OF THE LAWSUIT

Plaintiffs Tommy Nguyen, Paulus Nickediem, and Loc Tran filed this lawsuit against Versacom on November 26, 2013 alleging that Versacom willfully violated the federal Fair Labor Standards Act ("FLSA") by failing to pay field wireless technicians wages and overtime compensation for hours worked in excess of 40 hours in a workweek.  Plaintiffs are also alleging that the Versacom willfully violated the FLSA by failing to pay the statutorily required minimum wage when it did not pay field wireless technicians for any hours worked in a workweek.  The case is currently pending in the United States District Court for the Northern District of Texas as Cause No. 3:13-cv-04689-D.   Versacom denies Plaintiffs' claims and has asserted various defenses.  Plaintiffs' counsel in this cases are:

> Lu Pham
> lupham@canteyhanger.com
> Caroline Harrison
> charrison@canteyhanger.com
> Antonio U. Allen
> aallen@canteyhanger.com
> CANTEY HANGER, LLP
> Cantey Hanger Plaza
> 600 West 6th Street, Suite 300
> Fort Worth, Texas 76102
> Tel: (817) 877- 2800 and Fax: (817) 877-2807

Generally, the FLSA's overtime provisions require employers to compensate an employee at the rate of one and one-half times his or her regular hourly rate for all hours worked beyond 40 hours per week, unless that employee is properly classified as "exempt" from FLSA's overtime provisions. The Plaintiffs in this lawsuit claim that Versacom willfully failed to pay for all hours worked in excess of 40 hours in a workweek, and thus all overtime hours worked, when Versacom enforced its company policy of requiring pre-approval for any overtime hours worked. Plaintiffs seek back pay and liquidated damages for all eligible employees. Plaintiffs also seek recovery of court costs and attorneys' fees caused by the need to bring this suit.

## 3.  COMPOSITION OF THE CLASS

Plaintiffs sue on their own behalf and also on behalf of other employees with whom they are similarly situated. Those individuals alleged to be similarly situated are all current and former Versacom field wireless technicians who were employed between November 26, 2010 and _____, 2014.

This Notification is meant for the purpose of determining the identity of those who wish to be involved in this case. This Notification is also meant to provide an orderly way to determine who wishes to join this lawsuit and to prevent interference by Versacom. This Notification is also meant to inform you that it is against the law for Versacom to retaliate against you for deciding to join this lawsuit. Your right to participate in this suit may depend upon a later decision by the United States District Court that you and the representative Plaintiffs are actually "similarly situated."

## 4.  YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above—that is, if you are a current or former Versacom field wireless technician and were employed between November 26, 2010 and _____, 2014—you may be eligible to participate in this lawsuit.

You may file your written consent to participate in this lawsuit even if:

(a) Versacom told you that you were ineligible to receive overtime pay;
(b) Versacom paid you for some overtime hours worked but did not pay you for all hours you actually worked in excess of 40 hours in a workweek;
(c) Versacom told you that it was authorized to withhold your pay for all hours you actually worked in a particular workweek; and
(d) You did not keep records of your hours worked.

## 5.  HOW TO PARTICIPATE IN THIS LAWSUIT

Enclosed you will find a "Consent to Become A Party Plaintiff" form and Engagement Agreement (collectively "Consent Form"). If you choose to join this lawsuit, and thus participate in any recovery that may result from this lawsuit, **it is extremely important that you read, sign, and return the Consent Form within ___ days of the date of this notice's post**

mark.  **Failure to return the Consent Form within this time period will prevent you from participating in the lawsuit.**

If you have any questions about filling out or sending in the Consent Form, please contact Plaintiffs' counsel listed on page one of this notice.

### 6.  NO RETALIATION PERMITTED

It is a violation of federal law for Versacom to discharge or in any manner discriminate or retaliate against you for taking part in this case.  If you believe that you have been penalized, discriminated against or disciplined in any way due to receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, you should contact Plaintiffs' counsel immediately.

### 7.  EFFECT OF JOINING THIS SUIT

If you choose to join this lawsuit, you will be bound by the judgment, whether it is favorable or unfavorable.  You will also be bound by, and may share in, any settlement reached on behalf of the class.  While this lawsuit is proceeding, you may be required to provide information and documents, or otherwise participate in this action.

If you submit a consent form, your continued right to participate in this action depends upon a later decision by the Court that you and the named Plaintiffs are "similarly situated" according to applicable laws and that it is appropriate for this case to proceed as a collective action.

Plaintiffs' attorneys are working on a contingency fee basis, which means that if there is no recovery, they receive no attorneys' fee.  If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class.

If you sign and return the attached Consent Form, you are entering into an agreement with Plaintiffs' counsel concerning attorneys' fees and costs and all other matters pertaining to this lawsuit.

By joining this lawsuit, you designate the representative Plaintiff(s) as your agent(s) to make decisions on your behalf concerning the litigation, the method and manner of conducting the litigation, the entry of an agreement with Plaintiffs' counsel concerning fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiff(s) will be binding on you if you join this lawsuit.

### 8.  NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose *not* to join this lawsuit, any judgment or settlement rendered in this case, whether favorable or unfavorable to the class, will not affect you.  Meanwhile, you will not be entitled to share in any amounts recovered by the class.  You will remain free to file your own lawsuit, subject to any defenses that might be asserted.  Take note that the pendency of this suit does not stop the statute of the limitations from running as to any claims that you might have until you opt in to the case.

## 9. FURTHER INFORMATION

Additional information about this Notification, specifically, or about the lawsuit in general, may be obtained from Plaintiffs' counsel at the address, telephone number, facsimile number, and e-mail address identified above on the first page of this Notice.

_____

Lu Pham

## CONSENT TO BECOME A PARTY PLAINTIFF

Name: _____

1. I consent and agree to pursue former claims of unpaid overtime and/or minimum wage through the lawsuit filed against my employer, Versacom, LLC.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act and all applicable state law. I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3. I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if the court approves. If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

4. In the event the case is certified and then decertified, I authorize Cantey Hanger, LLC to use this Consent Form to re-file my claims in a separate or related action against my employer.

(Signature) _____     (Date Signed) _____

Consent Form to join as Plaintiff in FLSA Claim against Versacom, LLC, et. al.

22

LU PHAM
DIRECT: 817.877.2860
EMAIL: LPHAM@CANTEYHANGER.COM



CANTEY HANGER PLAZA
600 WEST 6TH STREET, SUITE 300
FORT WORTH, TEXAS 76102
817.877.2800 - METRO 817.429.3815
FAX: 817.877.2807

## CANTEY HANGER LLP

### A T T O R N E Y S

## ENGAGEMENT AGREEMENT

We are pleased that you have decided to retain Cantey Hanger LLP (the "Firm" or "we" or "our") as counsel to represent you in pursuit of your wage and overtime pay under the Fair Labor Standards Act ("FLSA") and related claim(s) against Versacom, LLC, and/or its affiliates (the "Engagement"). The purpose of this letter is to set forth Cantey Hanger's acceptance of this matter and to briefly set out the terms concerning legal services related to the above-referenced matter (the "Agreement"). By signing this Agreement, you are authorizing the Firm to pursue your FLSA claims against Versacom, LLC, and/or its affiliates (the "Employer").

**I.        Scope of Engagement**

The Firm's services will be limited to the representation of _____ (hereafter "you" or "your") in pursuit of your FLSA and related claims against the Employer. The Firm's representation of you does not include any matters not described in this Agreement. The Firm's receipt or use of confidential or other information from you in the course of this representation does not mean that the Firm will render any other advice or services either to you or any other person or entity associated with you. Similarly, you will not look to or rely upon the Firm for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom you may be dealing. In this matter, the Firm will be representing you and the Firm will not be representing any other person affiliated with you. If any of these persons think that they may require counsel, the Firm would be happy to discuss with them whether we might be able to represent them as well, but any such representation would need to be covered by a separate engagement agreement.

**II.       Communications Between You and the Firm**

We will keep you regularly informed of the status of this matter and will consult with you whenever appropriate. Communication with you will occur primarily through email. Therefore, by signing this agreement, you agree to keep the Firm apprised of your current email address and check your email inbox regularly for communications from the Firm. Furthermore, you agree to fully cooperate with the Firm in the investigation, preparation, and prosecution of this Engagement. Within the Firm, Lu Pham will be primarily responsible for this Engagement and will be actively involved in the preparation of the case and any trial or arbitration. As appropriate, various attorneys within the Firm may participate in representing your interests, and staffing levels may be changed as the need arises. The Firm will of course seek to staff this Engagement in an effective and efficient manner.

**III.      No Guarantee of Result**

In providing legal services to you, attorneys in the Firm may, from time to time, express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guaranties. The Firm cannot and do not guarantee any particular outcome of the Engagement.

Engagement Agreement
Page 2

**IV.      Contingent Fee**

In consideration of the services rendered and to be rendered by the Firm, you hereby set over, give to, assign, transfer, grant and convey to the Firm a present forty percent (40%) interest in your cause or causes of action and any recovery arising out of or related to this Engagement. Recovery is meant to include anything of value you receive through settlement or judgment, and includes, property, money, benefits, the forgiveness of debt, or any other thing of value, no matter how described, and also includes, without limitation, common law or statutory damages, exemplary, multiplied, or punitive damages, attorneys' fees, interest and court costs. If your recovery is unliquidated, such as an agreement to provide benefits in the future, the value of the recovery means the present value of the property or benefit recovered as of the date of settlement or judgment. You acknowledge that you are giving up at this time to the Firm the above stated amount and that the stated percentage will be paid to the Firm from the total amount of settlement or judgment recovered, AFTER THE REIMBURSEMENT OF ANY EXPENSES ADVANCED OR INCURRED BY THE FIRM.

**V.      Expenses**

Expenses typically include filing fees, service fees, travel and lodging expenses, expert witness fees, trial and litigation support fees, audio-visual equipment charges, deposition or videographer fees, transcript fees, and all other expenses incurred by the Firm as a consequence of pursuing this case which are not otherwise regular overhead of the Firm. This means that the amount of any expenses advanced by the Firm will come off the top of any settlement or judgment amount, and then the contingent fee will be figured after all expenses have been paid. By way of example, if $20,000 of expenses has been incurred, and there is a $100,000 recovery, $20,000 will be reimbursed to the Firm and the contingent fee will be calculated as 40% of $80,000, or $32,000. Thus the client will receive a net of $48,000 and the firm will receive a net of $52,000 ($32,000 + 20,000) in this example. If the recovery is less than the expenses advanced or incurred, the Firm will receive the entire recovery as a partial repayment of the expenses it has advanced or incurred. IN THE EVENT THERE IS NO RECOVERY, YOU WILL OWE NO FEE TO THE FIRM.

**VI.      Attorneys' Fees**

It is possible that your claim will involve, in part, a claim for attorneys' fees under state or federal law. Sometimes, courts are reluctant to award a contingent amount as a fee or the law may prevent the award of a contingent amount as a fee. We will therefore keep track of our hourly work on your case to ensure that your fee claim is maximized in the event this case proceeds to a final judgment. However, if there is a final judgment which includes a fee award, you agree that the Firm will be entitled to the greater of the contingent fee stated above or the attorneys' fees awarded in the judgment. By way of example, if you recover $100,000 from a final judgment, $80,000 of which is for damages, and $20,000 of which is for attorneys' fees, and the firm has advanced $20,000 of expenses, then the firm will be paid $32,000 out of the $100,000 recovery as its contingent fee and will also be reimbursed its $20,000 in expenses, so that the net to the client would be $48,000. Conversely, if you recover $100,000 in a final judgment, but only $60,000 of which is for damages and $40,000 of which is for attorneys' fees, then the firm will be paid $40,000 as its fee and will be reimbursed the $20,000 of expenses advanced, so the net to the client would be $40,000. AGAIN, IF YOU RECOVER NOTHING, YOU WILL NOT BE LIABLE FOR ANY ATTORNEYS' FEES TO THE FIRM.

**PAGE 2 of 4**

Engagement Agreement
Page 3

**VII.      Your Consent Is Required To Settle**

You acknowledge that the Firm is authorized to enter into settlement negotiations on your behalf as the Firm deems appropriate.  However, as with all cases, the ultimate decision whether to settle or not to settle remains with you.  On the other hand, if, in the Firm's opinion, a fair and reasonable offer has been made and you reject the advice of the Firm to settle, you, at the Firm's option, shall be obligated to immediately reimburse the Firm for costs and expenses incurred up to that time, and the Firm may withdraw from the case, retaining a lien on said cause of action for Attorneys' fees and expenses, to the extent earned and/or incurred.

**VIII.      Appeal and Collection**

This agreement does not provide for costs or fees of an appeal or for collection proceedings.  If you and the Firm agree that an appeal is appropriate in this case, or it becomes necessary to defend an appeal by one or more defendants, you may, at your option, either: (1) retain the Firm at is prevailing hourly rate; or (2) retain the Firm through a contingent fee payment of an additional ten percent (10%).  In the event you select the first option, we may require a monetary retainer to secure payment of our hourly services.  You may also, of course, retain separate counsel for any appeal in this action, but your decision to do so will not alter in any way the contingent fee amounts otherwise owed under this agreement.  If you and the Firm agree that collection proceedings are appropriate to obtain any Judgment, the Firm will not charge the client for attorneys' fees related to collection, but the Firm will be entitled to any additional attorneys' fee award recovered in a collection proceeding, and collection expenses will be charged against the client's portion of the recovery.

**IX.      Termination**

Above all, our relationship with you must be based on trust, confidence and clear understanding.  If you have any questions at any time about this Agreement or the work that the firm, or any attorney, is performing, please call Lu Pham to discuss your concerns.  You may terminate this representation at any time, with or without cause.  Subject to the application of Rule 1.15 of the Texas Rules of Professional Conduct, the Firm shall be permitted to withdraw as counsel for you if (1) Firm's investigation and/or discovery indicates that, in our professional opinion, a reasonable basis for your claims does not or no longer exists or that further pursuit of your claims will not be economically feasible or prudent; or (2) you fail to fully cooperate with the Firm or (3) we determine, in our judgment, that you have misrepresented or omitted any material facts concerning your claim.  Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf.

**X.      Date of Commencement and Termination of the Engagement**

Please note that the Firm is not obligated to perform services in connection with the Engagement until you have returned a copy of this letter to me duly countersigned.  However, the effective date of this Engagement is the date on which we first in fact perform services.  The Engagement will be considered terminated at the earlier of (i) your termination of the representation, (ii) the Firm's withdrawal from the representation, or (iii) the completion of the Firm's substantive work for you, which, in the absence of a letter notifying you of the completion of the Engagement, shall be presumed to occur six months after the rendition of the final bill.

**PAGE 3 of 4**

Engagement Agreement
Page 4

**XI.       Dispute Resolution-NO JURY TRIAL**

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. In the event of any complaint by you with respect to any issue relating to or arising from this Engagement you agree to meet with us to attempt a resolution through informal discussions.   In informal efforts to resolve a dispute are unsuccessful, you  agree that any controversy, claim or dispute that relates to or arises from this Engagement, or any work performed or not performed by the Firm shall be resolved by a District Court in Tarrant County Texas WITHOUT A JURY AND BY THE PRESIDING JUDGE OF THE COURT.

**XII.      Binding Agreement**

By signing below, you represent to us that you have had enough time to review this Agreement, that you understand it, and that you have either consulted another, independent lawyer about the provisions relating to the waiver of conflicts of interest and dispute resolution and any other portion of the engagement agreement that you as to which you wish to advice of counsel, or desire to waive the right to do so.

**XIII.     Amendments and Additional Engagements**

The provisions of this Agreement may only be amended in writing, signed by both parties.  If you later ask us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.  If the foregoing accurately reflects our agreement, please confirm that by signing and returning a copy to the Firm via email at (sdean@canteyhanger.com).

STATEMENT TO BE SIGNED BY CLIENT(S)

I have read the above Agreement and understand and agree to its contents.

By:_____

Date:_____

**PAGE 4 of 4**