UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY NGUYEN, PAULUS NIEKDAM, and LOC TRAN, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:13-cv-04689-D |
| VERSACOM, LLC, MUHAMMAD AL-AMIN, Individually, and AFREEN AL-AMIN, Individually, | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Darren S. Harrington
State Bar No. 24002232
David A. Scott
State Bar No. 17894515
Key Harrington Barnes, PC
3710 Rawlins, Suite 950
Dallas, Texas 75219
(214) 615-7922 (Harrington)
(214) 884-4810 (Scott)
(214) 615-7926 (Facsimile)
dharrington@keyharrington.com
dscott@keyharrington.com

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF OPPOSITION ....................................................................... 2

III. STANDARDS FOR CERTIFICATION OF A COLLECTIVE ACTION ............................. 3

IV. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN ................................................. 5

    A.   PLAINTIFFS' COMPLAINT ALLEGATIONS ARE CONTRADICTORY AND INCONSISTENT WITH THE PROPOSED COLLECTIVE GROUP ............................. 6

    B.   PLAINTIFFS' OWN EVIDENCE NEGATES ANY CLAIM OF SIMILARLY SITUATED EMPLOYEES. ....................................................................... 7

    C.   ALTERNATIVELY, PLAINTIFFS HAVE PRESENTED NO EVIDENCE FROM OTHER ALLEGED SIMILARLY SITUATED EMPLOYEES. .................................... 10

    D.   PLAINTIFFS' OWN EVIDENCE PRESENTS A CONFLICT AS LOC TRAN WAS A SUPERVISOR WHO WAS RESPONSIBLE FOR ANY ALLEGED UNLAWFUL PAY PRACTICE. ......................................................................................... 12

V. OBJECTIONS TO PLAINTIFFS' PROOF ............................................................... 13

VI. OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE ........................................... 14

VII. CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*Accord Johnson v. Am. Airlines, Inc.,*
  531 F. Supp. 957, 961 (N.D. Tex. 1982)......................................................................15

*Bernard v. Household Intern., Inc.,*
  231 F.Supp.2d 433 (E.D. Va. 2002)..........................................................................11

*Camp v. The Progressive Corp.,*
  8 Wage & Hour Cas.2d. 477 (E.D. La. 2002) ..........................................................4, 15

*D'Anna vs. M/A-Com., Inc.,*
  903 F.Supp. 889 (D. Md. 1995) ...........................................................................4, 5, 12

Doyel v. McDonald's Corp.,
  2010 WL 3199685 (E.D. Mo. 2010) ............................................................................9

*Freeman v. Wal-Mart Stores, Inc.,*
  256 F.Supp.2d 941 (W.D. Ark. 2003)....................................................................4, 5, 12

*Grayson v. K-Mart Corp.,*
  79 F.3d 1086 (11th Cir. 1996) .......................................................................................3

*H&R Block, Ltd. v. Housden,*
  186 F.R.D. 399 (E.D. Tex. 1999) ............................................................4, 5, 10, 11, 12

*Hall v Burk, M.D.,*
  2002 WL 413901 (N.D. Tex. 2002) ..............................................................................3

*Haynes vs. Singer Co.,*
  696 F.2d 884 (11th Cir. 1983) ................................................................................3, 12

Held v. Nat'l R.R. Passenger Corp.,
  101 F.R.D. 420 (D.D.C. 1984) ....................................................................................15

*Hoffman-La Roche, Inc. v. Sperling,*
  493 U.S. 165 (1989) ......................................................................................................3

*Holt vs. Rite Aid Corp.,*
  333 F.Supp. 2d 1265 (M.D. Ala. 2004).........................................................................4

*Johnson v. Am. Airlines, Inc.,*
  531 F. Supp. 957 (N.D. Tex. 1982) .............................................................................15

*Lusardi vs. Xerox, Corp.,*
  118 F.R.D. 351 (D. N.J. 1987) ......................................................................................3

*Mike v. Safeco Ins. Co. of Am.,*
  274 F.Supp.2d 216 (D. Conn. 2003) .............................................................................3

*Mooney v. Aramco Services Co.,*
  54 F.3d 1207 (5th Cir. 1995).............................................................................3, 4, 6, 7

*Munoz v. Big Valley, Inc.,*
  915 F.Supp.2d 46 (D.D.C. 2013) ................................................................................11

*Nieddu v. Lifetime Fitness, Inc.,*
  977 F.Supp.2d 686 (S.D. Tex. 2013)...............................................................3, 4, 5, 7, 10

*Quintanilla v. A & R Demolitina, Inc.,*
  2005 WL 2095104 (S.D. Tex. 2005)............................................................................15

*Sandoz v. Cingular Wireless LLC,*

553 F.3d 913 (5th Cir. 2008) ................................................................................................10

*Severtson vs. Phillips Beverage Co.*,
   137 F.R.D. 264 (D. Minn. 1991) ......................................................................................5

*Shushan v. University of Colorado*,
   132 F.R.D. 263 (D. Colo. 1990) .......................................................................................3

*Tucker v. Labor Leasing, Inc.*,
   872 F.Supp. 941 (M.D. Fla. 1994) ...................................................................................5

## Statutes

29 U.S.C. §216(b) ..............................................................................................................3, 5
29 U.S.C. §203(d) .................................................................................................................13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY NGUYEN, PAULUS NIEKDAM, and LOC TRAN, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:13-cv-04689-D |
| VERSACOM, LLC, MUHAMMAD AL-AMIN, Individually, and AFREEN AL-AMIN, Individually, | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Defendants Versacom LLC ("Versacom"), Muhammad al-Amin, and Afreen al-Amin file

this Response to Plaintiffs' Motion for Conditional Certification, and respectfully state:

## I.
## INTRODUCTION

Versacom is a nationwide provider of engineering, installation and integration services to

telecommunications companies. Versacom provides its customers with services relating to the

upgrade of wireless and wired telecommunication networks. Loc Tran, one of the three named-

plaintiffs in this case, was employed by Versacom from 2007 until May 3, 2013. In October,

2012, while he was still employed with Versacom, Tran set up a competing company. While

still employed with Versacom, Tran diverted business to the competing company using

Versacom technicians to perform the work.

On July 11, 2013, Versacom filed an action against Tran and the competing company

seeking damages for the unfair competition. That case is currently pending in the 416th District

Court of Collin County, Texas, Cause No. 416-02676-2013. In response to Versacom's unfair competition suit, Tran and two other former Versacom employees filed this action on November 26, 2013, asserting alleged violations of the Fair Labor Standards Act ("FLSA"). On October 4, 2013, approximately two months before this FLSA suit was filed, Tran sent an email soliciting current and former Versacom employees to join an FLSA case to be filed by the same law firm that was defending him in the unfair competition case (App. 3).

In paragraph 2 of their Motion, Plaintiffs now seek an order from this Court certifying a collective action and authorizing notice to:

> "[A]ll similarly situated current and former non-exempt employees of Versacom who worked as "Field Wireless Technicians" or similar positions however titled during the three years preceding the filing of this action (November 26, 2010 to present)."

## II.
## SUMMARY OF OPPOSITION

Plaintiffs' Motion is self-defeating. Plaintiffs claim that all field technicians had the same job duties and were subjected to the same "nationwide overtime policy." However, the Complaint allegations are contradictory, and Plaintiffs have not met their burden of proof. Plaintiffs' own evidence shows that the three named and purported "representative" plaintiffs are not similarly situated to each other. The affidavits and other evidence presented establish that the Plaintiffs held different positions, with different responsibilities, and different compensation, and that there was no single alleged overtime practice. Moreover, Plaintiffs have provided no competent evidence of any group of similarly-situated employees. Finally, Plaintiffs' own evidence presents a conflict because it shows that Loc Tran violated company policy as a field supervisor in charge of reporting time worked by technicians in the field.

# III.
## STANDARDS FOR CERTIFICATION OF A COLLECTIVE ACTION

Section 216(b) of the FLSA provides that an action to recover alleged unpaid overtime compensation may be brought by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). District courts have the discretionary power to conditionally certify a collective action and to authorize the sending of notice to potential class members pursuant to §216(b), but that certification is by no means mandatory. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Hall v Burk, M.D.*, 2002 WL 413901, at *2 (N.D. Tex. 2002). Instead, the power to authorize notice must be exercised with discretion and only in appropriate cases. *See Haynes vs. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983); *see also Nieddu v. Lifetime Fitness, Inc.*, 977 F.Supp.2d 686, 690 (S.D. Tex. 2013). The relevant inquiry, then, is whether this is an appropriate case for the Court to exercise its discretion to facilitate notice. *See Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 219 (D. Conn. 2003).

The courts have devised two approaches for determining whether collective treatment under §216(b) is appropriate. The first approach is set forth in *Lusardi vs. Xerox, Corp.*, 118 F.R.D. 351 (D. N.J. 1987), and is known as the "two-step" method.[1] Under this approach, the court considers certification in two phases. First, the court must decide whether the plaintiff has presented substantial evidence that similarly situated potential plaintiffs exist. This decision is

---

[1] The second approach is known as the spurious class action approach. *See Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990). Under the "spurious" approach, the court measures the claim using Rule 23 concepts such as "numerosity," "commonality," "typicality," and "adequacy of representation" to determine whether a class should be certified. *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). The Fifth Circuit has not decided which of the competing approaches should be employed by district courts in making class certification decisions. *See Mooney*, 54 F.3d at 1216. However, since Plaintiffs fall far short of satisfying the more lenient "two-step" approach as will be discussed below, there is no way they have met the more demanding "spurious" test. *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (section 216(b) requirements are less stringent than Rule 23 requirements).

made after the plaintiff has petitioned, as here, for judicially-certified notification of putative class members. *See Mooney*, 54 F.3d at 1213; *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999). The "two-step" approach lends itself to *ad hoc* analysis on a case-by-case basis. *See Camp v. The Progressive Corp.*, 8 Wage & Hour Cas.2d. 477, 480 (E.D. La. 2002). If the district court "conditionally certifies" the class at the first step, putative class members are given notice and the opportunity to "opt-in." *See Mooney*, 54 F.3d at 1214.[2]

Before allowing notice at this initial stage, the district court must satisfy itself that there are other employees of the defendant-employer who desire to "opt-in" and who are "similarly situated" with respect to: (1) their job requirements; and (2) their pay provisions. *See Holt vs. Rite Aid Corp.*, 333 F.Supp. 2d 1265, 1269 (M.D. Ala. 2004). Even the "modest" or "lenient" standard advocated by the Plaintiffs requires a substantial showing that the putative class members were together the victims of a *single* alleged decision, policy or plan. *See Mooney*, 54 F.3d at 1214 n. 8; *Nieddu*, 977 F.Supp.2d at 691. The Plaintiffs bear the burden of proof on these issues. *See Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003); *See D'Anna vs. M/A-Com., Inc.*, 903 F.Supp. 889, 893-894 (D. Md. 1995).

The Plaintiffs are required to present substantial allegations that the putative class members are similarly situated to the named Plaintiffs and to support those allegations with competent evidence. *See Nieddu*, 977 F.Supp.2d at 691; *Housden,* 186 F.R.D. at 400. The requirement of a substantial, preliminary factual showing based upon competent evidence is necessary to avoid stirring up unwarranted litigation. *See D'Anna*, 903 F.Supp. at 894; *Housden* 186 F.R.D. at 401; *See also Holt,* 333 F.Supp.2d at 1270 ("Without such a requirement, it is

---

[2] If the court grants conditional certification, the second step occurs after discovery is largely complete and the court considers the defendant's motion to decertify the class. At that point, the court makes a final factual determination as to whether the claimants are similarly situated. *See Mooney,* 54 F.3d at 1214.

doubtful that §216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."); *Freeman,* 256 F.Supp.2d at 945 ("It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.") As one federal court noted:

> As a matter of sound case management, a court should, before offering [to assist Plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists.... The courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation.

*Severtson vs. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991). Furthermore, an employer should not be unduly burdened by an unsubstantiated fishing expedition conducted by the plaintiff at the employer's expense. *See D'Anna*, 903 F.Supp. at 894; *Housden*, 186 F.R.D. at 401.

## IV.

## <u>PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN</u>

At the initial notice stage, the Court reviews the pleadings and any accompanying affidavits to determine whether conditional certification is appropriate. *See Nieddu*, 977 F.Supp.2d at 690. Consistent with concerns over the enormous costs associated with notice and subsequent discovery on opt-in claimants, courts that have addressed whether to conditionally certify a collective group have closely examined and analyzed the Complaint allegations and the evidence presented by the plaintiff. *See* e.g. *Housden*, 186 F.R.D. at 400; *D'Anna*, 903 F.Supp. at 894; *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947-949 (M.D. Fla. 1994) (court closely examined plaintiffs' evidence and concluded there were similarly situated individuals at one freight terminal located in Jacksonville, Florida but not at other terminals operated by the

company).  With these standards in mind, we turn to the allegations and affidavits submitted by the Plaintiffs.

**A.    PLAINTIFFS' COMPLAINT ALLEGATIONS ARE CONTRADICTORY AND INCONSISTENT WITH THE PROPOSED COLLECTIVE GROUP**

Count One of the Plaintiffs' Complaint (Doc. 1) addresses the alleged unpaid overtime claim.  Plaintiffs allege that Defendants' practice of failing to pay time-and-a-half rate for hours in excess of forty per workweek violates the FLSA.  With regard to the specific alleged policy or practice, Plaintiffs allege that Defendants violated the overtime rules by entering into agreements to pay the field technicians an "all inclusive" flat daily rate and then forbidding the employees to record or request overtime payment. (Complaint, par. 36).  But that is not the alleged "policy" used by Plaintiffs to justify conditional certification.  In paragraph 1 of their Motion, Plaintiffs reference an "unwritten companywide policy" of either not paying employees for any hours worked over 40, or capping overtime payments regardless of the number of hours actually worked.  In paragraphs 5 through 7 of the Motion, Plaintiffs refer to a "De Facto Policy" of requiring field technicians to work off the clock due to an alleged "policy of requiring prior approval for overtime work."

Not only are the Plaintiffs' allegations of the alleged unlawful "policy" a moving target, they are internally inconsistent and conflicting.  This is hardly the required foundation of a "single decision, policy, or plan" noted by the Fifth Circuit's Mooney decision. *See Mooney,* 54 F.3d at 1214 n. 8 (cited for this proposition on page 6 of Plaintiffs' Motion).

Additionally, the Complaint describes the purported collective group as field wireless technicians in the State of Texas (Complaint pars. 4 and 23).  Yet the Motion seeks conditional certification of and notice to the group of all field wireless technicians on a company-wide and nationwide basis.

Plaintiffs have not articulated a well-defined collective group of employees subjected to a single or common decision or practice as required for conditional certification. The Motion should be denied on that basis alone.

**B.   PLAINTIFFS' OWN EVIDENCE NEGATES ANY CLAIM OF SIMILARLY SITUATED EMPLOYEES**

As discussed above, it is the Plaintiffs' burden to present substantial allegations and proof supporting the alleged similarly-situated group who were together victims of a "single decision, policy, or plan." *See Mooney,* 54 F.3d at 1214 n. 8. Plaintiffs attempt to meet their burden with declarations from the three named Plaintiffs, Tommy Nguyen, Paulus Niekdam, and Loc Tran. But these declarations do not carry the burden, and they only serve to highlight why conditional certification is not appropriate in this case.[3]

**Tommy Nguyen Declaration**

Nguyen avers that he was a Field Wireless Technician (Pl's App. 3). With regard to alleged pay practices, the substance of Nguyen's declaration is limited to a project in Las Vegas, Nevada beginning in June, 2012 (Pl's App. 4, pars. 5-8). Nguyen avers that he turned in forms recording the overtime hours he worked, but he was only paid overtime "one or two times." (Pl's App. 4, pars. 6-7). Significantly, he does not say that he was told to not report his overtime hours or that he failed to report all of his overtime hours worked. He also does not say that he worked "off the clock."

**Paulus Niekdam Declaration**

Niekdam avers that he was employed by Versacom for only about six months in 2012 (Pl's App. 5, par. 2). He held the position of Senior Field Wireless Technician, and in that

---

[3] Muhammad al-Amin and Versacom deny the alleged statements attributed to Mr. al-Amin in the declarations. However, a debate as to the merits of the underlying claims is not appropriate at this juncture. *See Nieddu,* 977 F.Supp.2d at 690.

position, he had additional and greater responsibilities than a Field Wireless Technician such as Tommy Nguyen (Pl's App. 5, par. 3). He worked on projects only in San Diego and Los Angeles, California (Pl's App. 6, par. 4), and the substance of Niekdam's declaration is limited to those California projects. Niekdam avers that he reported an average of 20 to 30 hours of overtime each week, but he was only paid 10 hours of overtime each week (Pl's App. 6, pars. 5-8). Significantly, he does not say that he did not report all of his hours or that he worked "off the clock." [4]

**Loc Tran Declaration**

Tran avers that he held multiple jobs at Versacom over a period of about 6 years. During the last period of about 4 years, he worked on several different projects as a Senior Field Wireless Technician (Pl's App. 8, par. 2). As a Senior Technician, he had additional and greater responsibilities than a regular Field Wireless Technician. In fact, he supervised both Nguyen and Niekdam (Pl's App. 4, par. 4; 6, par. 4). Tran also received different and additional compensation for his supervisory duties (Pl's App. 9, par. 3). Like Nguyen and Niekdam, Tran tacitly admits that he was paid overtime, but he claims Versacom "frequently" refused to pay him for all of his overtime hours (Pl's App. 9, par. 5).

Tran asserts several different pay practices were used at different times, depending on the location of the project. On some projects, he reported all hours worked, but claims he was not paid for all overtime hours (Pl's App. 9-10, par. 6). He avers that, in November 2012, Versacom instituted a "new pay scheme" just for the installation and integration project in Chicago. For the Chicago project, he avers that Versacom paid technicians an "all inclusive" daily rate (Pl's App.

---

[4] The last two paragraphs of Niekdam's declaration refer to a personal situation involving theft of Company equipment from his personal vehicle, and Versacom's alleged failure to pay him for three weeks of wages due to the stolen equipment (Pl's App. 7, pars. 9-10). This is not pertinent to the underlying FLSA claim.

11, par. 10). At other times, he claims that he and other field technicians stopped reporting all hours worked due to Versacom's "policy" to pay overtime when approved by someone at the corporate office (Pl's App. 11, par. 12). Tran avers yet another pay scheme for the Atlanta, Georgia project in August 2011. For that project, he claims that he suggested a "max of 50 hours per week per technician instead of mandating that there is not to be any overtime worked without written pre-approval" (Pl's App. 12, par. 13).[5]

The three declarations filed with the Motion defeat the Motion. They establish that the three named plaintiffs are not similarly situated to each other, let alone to a purported group of all field wireless technicians across the country. Nguyen, Niekdam, and Tran had different positions and responsibilities, worked on different projects at different times, and were allegedly paid overtime to varying degrees depending on the project location.

Moreover, the declarations negate any claim that there is one nationwide group of field technicians who were all victims of a "single decision, policy, or plan." According to the named Plaintiffs' averments, there were at least seven different policies or schemes:

(1) A flat daily rate for the Chicago project beginning in November 2012;
(2) A cap of 10 hours of paid overtime in the San Diego and Los Angeles market for 6 months in 2012;
(3) All hours reported, but overtime not always paid (Las Vegas in 2012);
(4) A suggested maximum of 50 hours per week for the Atlanta project in August 2011;
(5) Technicians stopped reporting all hours worked, effectively deciding to work "off the clock."[6]
(6) A policy requiring advance written approval of overtime hours before they are worked; and
(7) A policy that overtime hours required approval from "someone" at the corporate office.

---

[5] Loc Tran's deposition was taken in the unfair competition case pending in state court. In his sworn testimony, Tran stated that his position, scope of work, and pay rate changed from project to project (App. 6-7). He testified that he became a supervisor for Versacom in 2010, and that he held the position of Field Manager (App. 7, 9).
[6] The federal courts have recognized that "off the clock" claims often present challenges for class-wide determination that preclude certification. *See, e.g. Doyel v. McDonald's Corp.,* 2010 WL 3199685, at *6-7 (E.D. Mo. 2010).

It is abundantly clear on this record that no similarly situated class of field technicians exists. Each alleged overtime claim will depend upon circumstances that are particular to the person, such as the time and location of the project worked, and the instructions received from their supervisors regarding the recording and payment of hours worked.

Furthermore, the Plaintiffs' proof is replete with references regarding what the employees were allegedly told by their managers and supervisors about recording time and about the payment of overtime (Pl's App. 4, par. 6; 6, pars. 7-8; 10, pars. 7-9; 11, par. 12; 12, pars. 13-14). Denial of a motion for conditional certification is appropriate where the plaintiff's claims rest on such allegations. *See, e.g., Carey v. 24 Hour Fitness USA, Inc.,* 2012 WL 4857562 *2 (S.D. Tex. 2012) (denying conditional certification because an inquiry as to whether the company's managers did not want employees to record accurate hours and whether the supervisors would violate written policies prohibiting off the clock work would require individualized analysis).

Plaintiffs have failed to meet their burden. The Motion should be denied.[7]

## C.   ALTERNATIVELY, PLAINTIFFS HAVE PRESENTED NO EVIDENCE FROM OTHER ALLEGED SIMILARLY SITUATED EMPLOYEES

In paragraph 14 of their Motion, the Plaintiffs acknowledge their burden to establish substantial allegations of a factual nexus between the named Plaintiffs and the purported group of opt-in plaintiffs. Courts consider factors such as whether affidavits of potential plaintiffs were submitted. *See Housden,* 186 F.R.D. at 400. Plaintiffs have presented no such proof here. Rather, as discussed above, the motion stands on the declarations from the three named Plaintiffs alone.

In the three declarations, the three named Plaintiffs offer conclusory statements to the

---

[7] If the Court does not conditionally certify the class, it must dismiss the opt-in employees and the named plaintiffs pursue their individual claims. *See Nieddu,* 977 F.Supp.2d at 690 (citing *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 n. 2 (5th Cir. 2008).

effect that Versacom refused to pay overtime to other field wireless technicians (Pl's App. 4, par. 8; Pl's App. 6, par. 6; Pl's App. 10, par. 6; Pl's app. 11, par. 10). The alleged "other employees" are not identified in the declarations. These conclusory statements are not sufficient proof, and such statements have often been rejected by courts addressing the conditional certification issue. *See Housden*, 186 F.R.D. at 400 (court refused to credit conclusory allegations in plaintiffs' affidavits that they believed other workers were denied overtime pay under similar circumstances); *Bernard v. Household Intern., Inc.,* 231 F.Supp.2d 433, 435-436 (E.D. Va. 2002)(court refused to credit vague statements in movant's declarations regarding treatment of employees at other locations); *Munoz v. Big Valley, Inc.,* 915 F.Supp.2d 46, 49-51 (D.D.C. 2013).

Even if the Court were to credit these statements, they would not constitute a substantial showing of similarly situated employees within the defined group of all field wireless technicians company-wide for the proposed period of more than three years (November 2010 to present). Nguyen's averment of "other technicians" is limited to Las Vegas in June 2012 (Pl's App. 4, par. 8), Niekdam's averment is limited to San Diego and Los Angeles in 6 months of 2012 (Pl's App. 6, par. 6), and Tran refers to a complaint in July 2011 (Pl's App. 10, par. 6) and the "daily rate scheme" in Chicago beginning in November 2012 (Pl's App. 11, par. 10). This is hardly evidence of any wide spread policy or violation by Versacom covering the entire country and the proposed three-year period. Furthermore, these isolated averments would fail to establish a group of similarly situated technicians for all the reasons set forth above.

The courts have consistently held that such unsupported assertions of wide-spread FLSA violations do not satisfy the burden under §216(b) of the FLSA to conditionally certify a putative class. *See, e.g. Haynes*, 696 F.2d at 887-888 (court did not abuse discretion by denying

unsubstantiated motion for notice to all present and past employees of the defendant in Florida);

*Housden*, 186 F.R.D. at 400; *Freeman*, 256 F.Supp.3d at 945; *D'Anna* 903 F.Supp. at 894.   In

fact, this case is virtually identical to the *Housden* case decided by the Eastern District of Texas.

In that case the court reasoned:

> In this case, movants have failed to do all of the above.  They have failed to identify potential plaintiffs, submit affidavits of potential plaintiffs, or submit any other evidence that might show a wide spread plan of discrimination existed.  All movants have done is submit affidavits making conclusory allegations.  They present, for example, affidavits of the two counter-plaintiffs which simply state that they believe other workers were discriminated against in similar ways.  ***Movants in this case make no such factual showing [of similarly situated potential plaintiffs], nor do they go beyond the level of making unsupported factual assertions. Consequently, under the "two-step" approach, their petition fails to satisfy the requirements of the first step.

*Housden*, 186 F.R.D. at 400.[8]

## D.   PLAINTIFFS' OWN EVIDENCE PRESENTS A CONFLICT AS LOC TRAN WAS A SUPERVISOR WHO WAS RESPONSIBLE FOR ANY ALLEGED UNLAWFUL PAY PRACTICE

While the declarations filed by the Plaintiffs set forth differing jobs, job duties, and pay

practices, they do have one common thread-- Loc Tran was a supervisor who was responsible for

monitoring and correctly reporting hours worked by technicians under his supervision in the

field.  For example, Tommy Nguyen avers that Loc Tran was one of his direct supervisors, and

he turned in his hours to his supervisor (Pl's App. 4, pars. 4, 6, 9).  In turn, his supervisor was

supposed to report the hours to Versacom's corporate offices for payment. Similarly, Paulus

Niekdam was supervised by Tran, and he turned in spreadsheets recording all hours worked in

---

[8] For similar reasons, the Plaintiffs have completely failed to satisfy the requirements for certification under the "spurious" class action approach.  The proof presented by Plaintiffs completely fails to satisfy the numerosity, commonality, typicality, and adequacy of representation factors required for certification under such an approach. Accord *Housden*, 186 F.R.D. at 400-401.

the San Diego and Los Angeles markets to Tran (Pl's App. 6, pars. 4, 7).  Tran allegedly told

them that the Company required approval of overtime from the corporate office, and that "the

company paid what the company paid." (Pl's App. 4, par. 6; 6, pars. 7-8).

Tran's declaration establishes that he was aware of Versacom's written overtime policy

(Pl's App. 9, par. 4, Ex. 1).  The policy provides that a supervisor (such as Tran) can authorize

overtime, that each employee should accurately record all time worked, and that employees

should not work "off the clock" under any circumstances. (Pl's App. 16). Despite his knowledge

of the policy and his responsibility as a supervisor, Tran essentially told the employees that there

was nothing he could do. Tran claims he did not report all hours worked by him and other

employees under his supervision, which if true, would be a direct violation of the Company's

written policy. (Pl's App. 12, par. 12).

This evidence creates a conflict between the named and purported "representative"

Plaintiffs, which is a further basis for denying the Motion. Additionally, under the FLSA, an

individual who is responsible for the alleged unlawful pay practice can be held personally liable

for any alleged violation.  29 U.S.C. §203(d) (FLSA liability extends to any person acting in the

interest of an employer, whether directly or indirectly).

## V.

## <u>OBJECTIONS TO PLAINTIFFS' PROOF</u>

As discussed above, even if all averments in the three Declarations are accepted as

competent evidence, Plaintiffs still have not met their burden.  Alternatively, and to the extent

necessary, Defendants object to the Declarations on the following grounds:

The second sentence of paragraph 6 of Nguyen's declaration is hearsay.   Paragraph 8 of

the Nguyen declaration is vague and conclusory.

The last sentences of paragraphs 7 and 8 of the Niekdam declaration (regarding alleged statements by a supervisor) constitute inadmissible hearsay.   Paragraphs 9 and 10 of the Niekdam declaration are not relevant with regard to the FLSA claim at issue.

The third sentence of paragraph 4 of the Tran declaration is conclusory and lacking foundation as to Muhammad al-Amin's alleged authority.   The second sentence of paragraph 7 regarding an alleged direction to staff is lacking in foundation of knowledge, and it constitutes hearsay.   The last sentence of paragraph 7 regarding alleged encouragement by "my supervisors" is vague and inadmissible hearsay.   The first sentence of paragraph 8 of the Tran declaration is hearsay, and it lacks a foundation of knowledge.   The last sentence of paragraph 10 is speculative regarding the alleged purpose of the "new pay scheme."   The second sentence of paragraph 12 regarding what Tran and other technicians were allegedly told is hearsay.   The last sentence of paragraph 12 is conclusory and speculative as to the alleged reasons why technicians allegedly stopped reporting hours worked.   The second sentence of paragraph 14 as to the state of mind of other unidentified field technicians is conclusory and speculative.   The last sentence of paragraph 14 is speculative and lacks a foundation of knowledge.

**VI.**
**OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE**

As discussed above, class certification is not appropriate in this case, and Plaintiffs' motion should be denied.   Therefore, it is unnecessary for the Court to consider the form and substance of the proposed notice submitted by Plaintiffs.

In any event, the Plaintiffs' proposed notice form (Pl's App. 18-21) is deficient in several respects.   Defendants object to the caption, specifically the "From" and Re:" portions.   The notice should not be sent personally from Plaintiffs' attorney Lu Pham.   The Re: line is not necessary, given the title and following sections describing the lawsuit.

Defendants object to section 2, as it gives the false impression that Plaintiffs' allegations are established facts. For example, the section states as a fact that Versacom "enforced its company policy of requiring pre-approval for any overtime hours worked."

Defendants object to the class definition in paragraph 3. Under the FLSA, the limitations period is not tolled with respect to other potential plaintiffs unless and until they opt in to the case. Therefore, the purported class is limited to workers employed by Versacom up to three years before the notice is approved by the Court (as opposed to three years before the suit was filed). *See Quintanilla v. A & R Demolitina, Inc.,* 2005 WL 2095104, at *16 (S.D. Tex. 2005). Defendants do not concede any alleged willful violation or that a three-year limitations period applies.

Defendants object to section 4 where it purports to inform putative group members that they can opt in despite certain actions by Versacom. Those actions are disputed, and some are not relevant (such as the alleged withholding of pay).

With regard to section 5, a thirty day notice period is sufficient. *Accord Johnson v. Am. Airlines, Inc.,* 531 F. Supp. 957, 961 (N.D. Tex. 1982) (21 days from transmittal of notice); *Held v. Nat'l R.R. Passenger Corp.,* 101 F.R.D. 420, 423 (D.D.C. 1984) (30 days from entry of order).

Defendants object to section 7 because it does not inform any recipient of the notice that he or she may be responsible for court costs if the claim is unsuccessful. *See Camp,* 8 Wage & Hour Cas. 2d at 482 (notice must include sentence concerning possible liability for costs). Defendants propose that the following sentence be added at the end of section 7:

> "If you decide to join the lawsuit, but your claim is not successful, you may be required to pay the Defendants' costs in defending your claim."

Additionally, the first paragraph of section 7 should state that the person may be required to appear at a deposition or trial in Dallas, Texas. Section 8 should affirmatively state that the

recipient can choose not to join the lawsuit. Defendants also believe that their attorneys' contact information should be provided in section 9, along with Plaintiffs' counsel.

Defendants reserve the right to address these notice issues in more detail and to provide a further substantive response, depending upon the Court's ruling on Plaintiffs' Motion.

## VII.
## CONCLUSION

Plaintiffs have failed to meet their burden of proof to warrant conditional certification.  In fact, the proof submitted by the Plaintiffs contradicts the Complaint allegations and only serves to establish that this is not an appropriate case for collective treatment.  The declarations show that the three named Plaintiffs are not similarly situated to each other due to differing jobs, job responsibilities, pay, and a potential conflict caused by Loc Tran's supervisory authority and responsibilities. Additionally, the proof negates any claim of a similarly situated group because it highlights several different alleged pay schemes and policies, as well as other allegations that require individualized inquiry and analysis.  Finally, the Plaintiffs have offered no competent proof of any alleged similarly situated individuals. The Court should exercise its discretion to deny Plaintiffs' motion.

For the reasons set forth above, Defendants respectfully request that Plaintiffs' Motion for Conditional Certification be denied in its entirety, that the individuals who have filed notices to opt-in to the case be dismissed, and that the Court grant Defendants such other relief as is appropriate.

Respectfully submitted,

By: /s/ Darren S. Harrington
         Darren S. Harrington
         State Bar No. 24002232
         David A. Scott
         State Bar No. 17894515
         Key Harrington Barnes, PC
         3710 Rawlins, Suite 950
         Dallas, Texas 75219
         (214) 615-7922 (Harrington)
         (214) 884-4810 (Scott)
         (214) 615-7926 (Facsimile)
         dharrington@keyharrington.com
         dscott@keyharrington.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of August, 2014, a true and correct copy of the foregoing document was delivered to all counsel of record by electronic filing and service in accordance with the Federal Rules of Civil Procedure.

/s/ Darren S. Harrington

# APPENDIX

# LOC TRAN EMAIL

On Oct 4, 2013 12:33 AM, "Loc Tran" <loc.versa@gmail.com> wrote:

All, I have decided to hire the Cantey Hanger law firm to file a lawsuit against Versacom for not paying me correctly in the years that I worked for them. Cantey Hanger has been in business for over 100 years and has a good reputation. They said that they are willing to represent anyone else who wants to join in my lawsuit. You will not be charged for legal fees if they do not win your case. They will take a percentage of any recovery they make for you. If you are interested, then let me know and I will give you the lawyer's information.


BR,

Lộc Tran
817-233-4263



---
Best regards,
Jo Nguyen
817.713.9663

# LOC TRAN DEPOSITION

LOC Q. TRAN

1

08:48

1    <u>NO. 416-2676-2013</u>

2    VERSACOM, LLC                (    IN THE DISTRICT COURT

3        Plaintiff,              (
                                  (
4    v.                          (    416th JUDICIAL DISTRICT
                                  (
5    NETICOM, LLC, LOC Q. TRAN   (
6    And TUAN A. NGO             (
                                  (
7        Defendants.             (    OF COLLIN COUNTY, TEXAS

8    _____

9                    ORAL DEPOSITION
                            OF
10                      LOC Q. TRAN
                      JULY 10, 2014
11   _____

12   PORTIONS OF THIS TRANSCRIPT MAY BE CONFIDENTIAL
     PURSUANT TO AN AGREED PROTECTIVE ORDER ENTERED IN THIS
13   CASE.  PLEASE CONSULT COUNSEL PRIOR TO REVIEW.

14

15         ORAL DEPOSITION OF LOC Q. TRAN, a witness

16   produced at the instance of the Plaintiff, and duly

17   sworn, was taken in the above styled and numbered cause

18   on the 10th day of July, 2014, from 10:18 a.m. to

19   5:26 p.m., before Lyenda Johnston, CSR in and for the

20   State of Texas, reported by stenographic method, at the

21   offices of Cantey Hanger LLP, located at Cantey Hanger

22   Plaza, 600 W. 6th Street, Suite 300, Fort Worth, Texas

23   76102, pursuant to the Texas Rules of Civil Procedure

24   and the provisions stated on the record or attached

25   hereto.

COPY

1      A.    No.                                                    10:29

2      Q.    Did you say no?                                        10:29

3      A.    Can you repeat your question, please?                  10:29

4      Q.    Yeah.  I'm just wanting to confirm that I              10:29

5   understand what you -- what you just testified to.  Was   10:29

6   it -- was it typical that you would receive an offer      10:29

7   letter first before a project started?                    10:29

8      A.    Yes, right before the project started.             10:29

9      Q.    Okay.  And the offer letter came from               10:29

10  Versacom?                                                   10:29

11     A.    Yes.                                                 10:29

12     Q.    All right.  And you would sign this offer          10:30

13  letter?                                                     10:30

14     A.    Some offer that I sign and some is negotiate       10:30

15  through e-mail.                                             10:30

16     Q.    Okay.  And what information was contained in       10:30

17  this offer letter?                                          10:30

18     A.    For my position.                                    10:30

19     Q.    Okay.  Anything else?                               10:30

20     A.    Scope of work.                                      10:30

21     Q.    Okay.                                               10:30

22     A.    And pay rate.                                       10:30

23     Q.    Anything else?                                      10:30

24     A.    No.                                                 10:30

25     Q.    All right.  Did you typically have the same        10:30

1   position on -- on every project, or did that change          10:30
2   from project to project?                                     10:30
3       A.   Changed from project to project.                    10:30
4       Q.   All right.  What positions would you -- did         10:30
5   you hold for different projects?                             10:30
6       A.   I don't recall all of them, but...                 10:30
7       Q.   Can you remember any of the positions you          10:30
8   held?                                                        10:30
9       A.   Field -- field manager.                             10:30
10      Q.   Okay.                                               10:31
11      A.   Senior technician and project call test            10:31
12  coordinator.                                                 10:31
13      Q.   I'm sorry, project?                                 10:31
14      A.   Call test coordinator.                              10:31
15           MR. PHAM:  Call test coordinator.                   10:31
16      Q.   (By Mr. Harrington)  Okay.  What were your          10:31
17  responsibilities as a field manager for Versacom?           10:31
18           MR. PHAM:  Objection, form.                         10:31
19      A.   Send out schedule, report, and also work as a      10:31
20  technician.                                                  10:31
21      Q.   (By Mr. Harrington)  I'm sorry, what was the       10:31
22  last one?                                                    10:31
23      A.   Work as a technician.                               10:31
24      Q.   Okay.  What would you report?                       10:32
25      A.   Daily -- daily work.                                10:32

1   companies in 2010 when Versacom started performing                  02:44

2   integration and installation services?                             02:44

3       A.   No.                                                        02:44

4       Q.   Had you terminated your position with those               02:44

5   companies?                                                         02:45

6       A.   Yes.                                                       02:45

7       Q.   All right.  Which one?                                     02:45

8       A.   I think it was with Glotel.                                02:45

9       Q.   Okay.  And when you put together a team for                02:45

10  Versacom in 2010, where did you hire those technicians             02:45

11  from?                                                              02:45

12      A.   They been off on a project and waiting for --             02:45

13  off on a project from another company, that previous              02:45

14  company, so they was -- they're home waiting for                   02:45

15  another company to hire them.                                      02:45

16      Q.   All right.  Was that Glotel?                              02:45

17      A.   No.                                                        02:45

18      Q.   Parsaon?                                                   02:45

19      A.   I don't know.  I just know that they finished            02:45

20  up their project with other company.                               02:45

21      Q.   Okay.  But you don't know which company?                  02:45

22      A.   No.                                                        02:45

23      Q.   Okay.  And so you hired them then to come work            02:45

24  for Versacom?                                                       02:46

25      A.   Yes.                                                       02:46

1  Versacom?                                                    02:47

2      A.  I don't remember.                                    02:47

3      Q.  Do you remember what your title was?                 02:47

4      A.  I don't remember, but I guess it's a --              02:47

5          MR. PHAM:  Don't guess.  Don't guess.                02:47

6          THE WITNESS:  Okay.                                  02:47

7      Q.  (By Mr. Harrington)  Were you a field manager?       02:47

8      A.  No.                                                  02:47

9          MR. PHAM:  Objection, form.                          02:47

10     Q.  (By Mr. Harrington)  Field supervisor?               02:47

11         MR. PHAM:  Objection, form.                          02:48

12     A.  No.                                                  02:48

13     Q.  (By Mr. Harrington)  Were you in a supervisory       02:48

14 capacity?                                                    02:48

15         MR. PHAM:  Objection, form.                          02:48

16     A.  No.                                                  02:48

17     Q.  (By Mr. Harrington)  All right.  During your         02:48

18 time with Versacom, were you ever a supervisor?             02:48

19     A.  Yes.                                                 02:48

20     Q.  Okay.  When were you -- when did you first           02:48

21 become a supervisor for Versacom?                            02:48

22     A.  I don't remember.                                    02:48

23     Q.  Give me a rough approximation.                       02:48

24     A.  Sometime 2010.                                       02:48

25     Q.  Okay.  And what were your responsibilities?          02:48

1                NO. 416-2676-2013

2   VERSACOM, LLC                  (    IN THE DISTRICT COURT
3       Plaintiff,                 (
                                   (
4   V.                             (    416th JUDICIAL DISTRICT
5   NETICOM, LLC, LOC Q. TRAN      (
6   And TUAN A. NGO                (
7       Defendants.                (    OF COLLIN COUNTY, TEXAS

8   --------------------------------------------------------
9               REPORTER'S CERTIFICATION
10         ORAL DEPOSITION OF LOC Q. TRAN
11            REPORTED ON JULY 10, 2014
12  --------------------------------------------------------
13      I, Lyenda Pollard Johnston, Certified Shorthand
14  Reporter in and for the State of Texas, hereby certify
15  to the following:
16      That the witness, LOC Q. TRAN, was duly sworn by me
17  and that the transcript is a true record of the
18  testimony given by the witness;
19      That the deposition transcript was submitted on
20  July 23, 2014 to the witness for examination, signature
21  and return to me by August 15, 2014.
22      That the amount of time used by each party at the
23  deposition is as follows:
24      Mr. Darren S. Harrington - 4 hours and 35 minutes.
25      That pursuant to information given to the

1    deposition officer at the time said testimony was

2    taken, the following includes counsel for parties of

3    record:                                          09:40

4        For the Plaintiff:

5            Mr. Darren S. Harrington
             Key Harrington Barnes, PC
6            3710 Rawlins, Suite 950
             Dallas, Texas 75219

7
         For the Defendant:
8
             Mr. Lu Pham
9            Cantey Hanger LLP
             Cantey Hanger Plaza
10           600 W. Sixth Street, Suite 300
             Fort Worth, Texas 76102
11

12       I further certify that I am neither counsel for,

13   related to, nor employed by any of the parties or

14   attorneys in the action in which this proceeding was

15   taken, and further that I am not financially or

16   otherwise interested in the outcome of the action.

17       Further certification requirements pursuant to Rule

18   203 of the TRCP will be certified to after they have

19   occurred.

20       Certified to by me this 21st day of July, 2014.

21                        _____
                          Lyenda Johnston, CSR
22                        Johnston Reporting, LLC
                          Certification No. 2919
23                        Expiration Date:  12/31/14
                          P.O. Box 1336
24                        Canton, Texas 75103
                          (214) 454-4572
25                        LJohnstonCSR@cs.com
                          Firm No. 716

1      FURTHER CERTIFICATION UNDER RULE 203 TRCP

2      The original deposition was/was not returned to the
deposition officer on August 15, 2014;

3
4      If returned, the attached Changes and Signature
page contains any changes and the reasons therefor;

5      If returned, the original deposition was delivered
to Mr. Darren S. Harrington, Custodial Attorney;

6
7      That _____ is the deposition officer's
charges to the Plaintiff for preparing the original
deposition transcript and any copies of exhibits;

8
9      That the deposition was delivered in accordance
with Rule 203.3, and that a copy of this certificate
was served on all parties shown herein and filed with

10     the Clerk.

11     Certified to by me this _____ day of _____,
2014.

12

13

14     _____
       Lyenda Johnston, CSR

15     Johnston Reporting, LLC
       Certification No. 2919

16     Expiration Date:  12/31/14
       P.O. Box 1336

17     Canton, Texas 75103
       (214) 454-4572

18     LJohnstonCSR@cs.com
       Firm No. 716

19

20

21

22

23

24

25