IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TOMMY NGUYEN, et al., § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. 3:13-CV-4689-D |
| VS. § | |
| § | |
| VERSACOM, LLC, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this certified collective action to recover unpaid hourly wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, defendants Versacom, LLC ("Versacom"), Muhammad Al-Amin ("Muhammad"), and Afreen Al-Amin move to decertify, contending that the opt-in plaintiffs are not similarly situated, as required by 29 U.S.C. § 216(b). Concluding that plaintiffs have met their burden of proving that they are similarly situated, the court denies the motion.

I

This is a certified collective action brought by lead plaintiffs Tommy Nguyen, Paulus Niekdam, and Loc Tran, individually and on behalf of all others similarly situated.[1] Plaintiffs sue under 29 U.S.C. § 216(b), a provision of the FLSA, to recover unpaid hourly wages and

---

[1]Defendants do not challenge the sufficiency or admissibility of the evidence supporting plaintiffs' claims for unpaid overtime. The briefing focuses instead on whether plaintiffs are similarly situated. Accordingly, in deciding defendants' motion, the court accepts as true the uncontested facts that plaintiffs allege.

overtime pay.

Versacom is a nationwide provider of engineering and installation services to telecommunication companies. Muhammad serves as Versacom's general manager and runs the company's day-to-day operations. Plaintiffs are former Versacom employees who worked as field wireless technicians, senior field wireless technicians, or in other similar positions. As field wireless technicians, plaintiffs were employed on a per-project basis, traveled out of state to customer locations, and installed software and conducted repair, maintenance, and testing of customer telecommunications systems. Plaintiffs allege that field wireless technicians and senior field wireless technicians had the same responsibilities at the site, but senior field wireless technicians performed additional tasks off-the-clock, such as assigning work and reporting project status and team hours. Plaintiffs assert that both field and senior field technicians spent time off-the-clock reporting their work and completing other paperwork.

Plaintiffs maintain that, while they were employed by Versacom, defendants purposefully failed to properly compensate technicians for all hours worked, and failed to pay overtime for hours worked in excess of 40 hours per week, in violation of the FLSA. Versacom paid each plaintiff in accordance with at least one of three compensation structures: hourly, flat-rate daily, and flat-rate by-the-job. In consultation with Versacom's human resources manager, Muhammad determined which compensation plan applied to each project. Plaintiffs contend that the hourly structure failed to account for work that technicians were required to perform off-the-clock, but for which they were not paid

overtime because of Versacom's strict policy against non-approved overtime. They also maintain that the flat-rate daily and flat-rate by-the-job payment structures failed to properly account for other overtime hours worked, as required by the FLSA.

The lead plaintiffs moved to certify the lawsuit as a collective action under §216(b). This court conditionally granted the motion, contemplating that defendants could file a motion to decertify the collective action after sufficient discovery had been conducted. *See Nguyen v. Versacom, LLC*, 2015 WL 1400564, at *2 (N.D. Tex. Mar. 27, 2015) (Fitzwater, J.) ("*Nguyen I*").

As of today's decision, the collective action includes 72 opt-in plaintiffs in addition to the lead plaintiffs. In February 2016, after nearly one year of discovery, including depositions and interrogatories served on some plaintiffs, defendants filed the instant motion to decertify. Plaintiffs oppose the motion. Defendants have also filed a motion for leave to supplement their motion to decertify the collective action with additional documents that pertain to a state court judgment that they contend is relevant to one of their defenses. Plaintiffs have not responded to that motion.

II

Section 216(b) of the FLSA authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court. 29 U.S.C. § 216(b). "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding

of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

In *Nguyen I* this court applied a two-stage test preferred in most federal courts to determine when courts should exercise their discretion to certify a collective action. *Nguyen I*, 2015 WL 1400564, at *2.

> Under this test, the court first determines whether the plaintiff has provided sufficient evidence of similarly-situated potential plaintiffs to warrant court-facilitated notice. If [he] has, the court conditionally certifies the class and facilitates notice to the potential plaintiffs. Second, the court reexamines the class after notice, time for opting in, and discovery has taken place, typically in response to defendant's motion. If it finds that the class is no longer made up of similarly-situated persons, it decertifies the class. To establish that employees are similarly situated, a plaintiff must show that [he is] similarly situated with respect to [his] job requirements and with regard to [his] pay provisions. The positions need not be identical, but similar.

*Id.* (quoting *Behnken v. Luminant Mining Co.*, 997 F.Supp.2d 511, 516 (N.D. Tex. 2014) (Fitzwater, C.J.) (citations omitted in original)). At the more lenient conditional certification stage in *Nguyen I*, the court held that "plaintiffs . . . made substantial allegations of the existence of similarly-situated employees of the putative class who would desire to opt-in and have therefore met the requirements for conditional certification of the class." *Id.* at *8.

At the second stage, the court conducts a much more stringent inquiry into whether the plaintiffs are similarly situated, and the plaintiffs bear the burden of proof. *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (Robinson, J.). "This is often done at the initiation of a motion for decertification." *Id.* "The decision

whether to decertify a collective action is within the district court's discretion," *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 534 (S.D. Tex. 2008), and its decision is reviewed for abuse of discretion, *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213 (1995) ("the district court's *application* of the [decertification] standard must be reviewed for abuse of discretion." (emphasis in original)) (addressing collective action under Age Discrimination in Employment Act of 1967), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

"At step two, courts generally consider the following factors when determining whether a lawsuit should proceed collectively: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Falcon*, 580 F.Supp.2d at 534 (citing cases). "Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively." *Id.* (collecting cases). "Instead, the question is whether there is 'a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice.]'" *Proctor*, 250 F.R.D. at 280 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (ellipsis and brackets in original)). "Decertification is proper if 'the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'" *Id.* (quoting *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987)).

III

Under the first decertification factor, the court considers the disparate factual and employment settings of the individual plaintiffs.

A

"In looking at the factual disparities among Plaintiffs, the Court must consider if it can coherently manage the class in a manner that will not prejudice any party." *Id.* at 281 (internal citations and quotation marks omitted). Although not a necessary factor, the presence or absence of a common policy, plan, pattern, or practice affecting the plaintiffs significantly informs the court's decision. *See Falcon*, 580 F.Supp.2d at 535. "If there is no single decision, policy, or plan that affects the Plaintiffs, the case will have enormous manageability problems[.]" *Proctor*, 250 F.R.D. at 281 (internal citations and quotation marks omitted). Courts also consider, *inter alia*, similarities in plaintiffs' job locations, management structure, and job duties. *See, e.g., Reyes v. Tex. EZpawn, L.P.*, 2007 WL 101808, at *3-4 (S.D. Tex. Jan. 8, 2007).

Defendants primarily contend that plaintiffs cannot be similarly situated because the manner in which they were paid varied from plaintiff to plaintiff, and thus did not constitute a common policy. Some were paid by the hour, some by the day, others by the job, and many by some combination of the three. Defendants maintain that, if the case continues as a collective action, they will be forced to litigate the legality of payment policies as uniquely applied to each individual.

Defendants also contend that the legal questions may vary depending on which

payment structure was applied to a particular plaintiff. In their reply, defendants argue that "Plaintiffs cite three separate unlawful decisions, policies or plans: (1) the overarching failure to track actual hours worked — per site and per day; (2) failure to approve 'after-the-fact' overtime; and (3) failure to pay 'off the clock hours.'" Ds. Reply 4. And they posit that the court must examine each plaintiff's particular claim and evidence individually with respect to liability and damages, thereby defeating the procedural advantages of a collective action.

Plaintiffs respond that they are not challenging the individual payment policies. They contend that their action focuses instead on a characteristic common among all three: failure to properly track and pay for all of the hours defendants' technicians worked.

B

Plaintiffs' claims stem from two alleged Versacom practices: (1) failing to track and compensate for actual hours worked, and (2) forcing technicians to work overtime without compensation. According to plaintiffs' evidence, every member of the collective action was allegedly underpaid because of at least one of these practices. The decision concerning which specific compensation structure was used for a particular project was wholly within the control of central management. *Cf. Basco v. Wal-Mart Stores Inc.,* 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (holding that decertification proper where allegedly illegal payment decisions were not centrally made with uniform justifications). Defendants' summary of the issues unnecessarily divides the second practice into two distinct, unlawful practices. The company allegedly failed to pay off-the-clock hours under its hourly payment policy *because* it failed to approve after-the-fact overtime. The two are causally related, not

- 7 -

separate, practices.

The court disagrees, however, with plaintiffs' position that Versacom engaged in a single uniform practice. A practice must be something more than a mere allegation of illegality. *See Hunter v. Sprint Corp.*, 346 F.Supp.2d 113, 119 (D.D.C. 2004) ("[C]ourts emphasize that class members in a collective action must share more than a common allegation that they were denied overtime or paid below the minimum wage. The class members must put forth a common legal theory upon which each member is entitled to relief."(internal citations and quotation marks omitted)).

A district court in this circuit recently addressed a similar situation in which not all opt-in plaintiffs were subject to each challenged payment policy. In *White v. NTC Transportation, Inc.*, 2013 WL 5874566 (N.D. Miss. Oct. 31, 2013),[2] the opt-in plaintiffs were all subjected to three policies that they alleged violated the FLSA. *Id.* at *5. A fourth allegedly unlawful policy applied only to a subset of the group. The court nevertheless declined to decertify the collective action.

> Whereas all Plaintiffs, including those asserting [additional] claims, held the same position, performed the same duties, were paid in the same manner, and were subject to three of the policies at issue in this case, those Plaintiffs asserting additional . . . claims should not be precluded from proceeding

---

[2]Defendants attempt to distinguish *White* by arguing that "these company policies were uniformly applied to the class as a whole which made adjudication of the class manageable." Ds. Reply 6. The court disagrees with this interpretation of the case. *See White*, 2013 WL 5874566, at *6 ("Plaintiffs also allege that some drivers received incentive pay for so-called 'lift hours' and that Defendants failed to include these hours in the calculation of those drivers' overtime pay.").

> collectively with the other Plaintiffs. Were the Court to decertify this collective action, the inevitable result would be many individual, virtually identical trials . . . . Accordingly, the Court, having found all Plaintiffs to be otherwise similarly situated, finds class treatment of Plaintiffs' claims appropriate and desirable.

*Id.* at *6. In the instant case, each plaintiff alleges damages resulting from at least one—but no more than two—allegedly illegal practices. Were this collective action decertified, the same problems that the *White* court sought to avoid would arise in this case. All of the individual plaintiffs would litigate one of two possible legal issues to determine liability, with some litigating both. And while damages might vary among the individual plaintiffs, district courts in this circuit have consistently held that "[w]hether individualized determinations are necessary to define the extent of Plaintiffs' damages, if any, does not weigh against efficiently establishing Defendants' class-wide liability." *Metcalfe v. Revention, Inc.*, 2012 WL 3930319, at *6 (S.D. Tex. Sept. 10, 2012); *see also White*, 2013 WL 5874566, at *7. Rather, the court may efficiently manage disparities in damages by exercising its discretion to use bifurcated proceedings or other available tools.

Defendants maintain that plaintiffs cannot be similarly situated because of variations in project location, job duties, and management structure. They posit that, as a result, it will be necessary to conduct separate mini-trials at which each plaintiff will be required to prove the hours the plaintiff worked.[3] But the variations are not as great as defendants contend.

---

[3]Defendants present the issue as follows:

> Any two given plaintiffs . . . might have worked at different

- 9 -

Versacom did not have local managers who could develop various labor policies, as was the case in *Basco*, 2004 WL 1497709, at *8 (noting that local Wal-Mart managers made different decisions based on the unique situations in each store and department). Furthermore, as noted, individuality in damage calculations is alone an insufficient justification for decertification. *See Metcalfe,* 2012 WL 3930319, at *6. And defendants advance no argument that the dissimilarities they raise have an effect on the court's ability to efficiently and justly determine liability.

The court concludes that there are sufficient factual and legal nexuses to support a collective action, and that the first decertification factor favors plaintiffs.

IV

The second decertification factor considers the various defenses available to defendants that appear to be individual to each plaintiff.

The court must determine whether the available defenses "pertain to the opt-in class as a whole or whether many different defenses will be raised with respect to each individual

---

> locations, with different coworkers and different managers, on different shifts and during different years, under different compensation methods and allege entirely different factual bases for the alleged non-payment . . . . At each location, each plaintiff would thereupon travel to tens, if not hundreds, of different cell towers to perform the software services. At each tower, the technician is required to log in and log out with the customer. Each plaintiff's claim will require individual proof of the hours allegedly worked at each cell tower site, including the hours he was logged into the site.

Ds. Br. 15-16.

- 10 -

plaintiff." *Reyes*, 2007 WL 101808, at *5 (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000)). If the court finds that defenses are individualized, it retains discretion to decertify if "the potential defenses would make the class unmanageable." *Id.*

A

Defendants raise two potential defenses that they maintain must be litigated on individual bases. They first contend that approximately 19 plaintiffs worked for direct competitors on at least some of the days for which they claim unpaid overtime.[4] Defendants do not discuss the legal basis for this defense. As support, they submit timesheets that purport to show that certain plaintiffs billed various organizations on the same days they worked for Versacom. Defendants contend that this defense would require evidence for each of the 19 plaintiffs, including calling witnesses to testify as to each plaintiff. Defendants posit that this process overwhelms the entire collective action.

At stage two, the court is to consider *available* defenses. *See Proctor,* 250 F.R.D. at 280. Although plaintiffs bear the burden of proving that they are similarly situated, *id.,* defendants bear the burden of proving the merits of a defense. *See, e.g., Duff v. Farmers Ins. Exch.*, 2014 WL 1577786, at *5 (N.D. Tex. Apr. 21, 2014) (Fitzwater, C.J.) (holding that when affirmative defense is not element of plaintiffs' cause of action, defendant has burden

---

[4]Defendants move to supplement this argument with evidence that a state court found in their favor in a trial on this issue. The supplementary information that they ask to include still does not provide the court with a legal basis to conclude that working simultaneously for a competitor would preclude defendants from being held liable for the failure to pay overtime. The court therefore denies the motion to supplement as moot.

- 11 -

of proof). Defendants have not provided any legal basis for the court to conclude that an employee's simultaneous work for a competitor gives rise to a valid defense to liability for unpaid overtime. Accordingly, the court declines to consider whether this alleged defense is a basis for decertifying this collective action.

B

Defendants also intend to raise a defense that 10 workers should be classified as exempt from the requirements of the FLSA as high-salaried employees. *See* 29 C.F.R. 541.601. Such a classification, defendants argue, would be warranted solely because this group of plaintiffs earned more than $100,000 annually from Versacom.[5]

This defense would not present logistical or legal issues that would burden the court or the parties. The court would need only need to determine whether the defense is available as a matter of law. If it is, the defense could be proved to the trier of fact with minimal evidence, such as through payment records or through brief questioning. The court holds that litigating this defense would not render this collective action unmanageable.

V

The third decertification factor evaluates fairness and procedural considerations against the backdrop of the two purposes of an FLSA collective action: (1) to ease the burden

---

[5]Plaintiffs respond that this defense is unavailable because (1) Versacom cannot retroactively classify employees as exempt, and (2) the 10 plaintiffs were never paid by salary as required by the executive exemption. Because the court concludes that the defense as presented would not burden the case, the court need not decide whether the defense is valid.

on similarly situated plaintiffs, and (2) to ease the burden of duplicative claims on the judicial system. *See Hoffman-La Roche*, 493 U.S. at 170. "[P]laintiffs can hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action." *Falcon*, 580 F.Supp.2d at 541 (quoting *Bradford v. Bed Bath & Beyond*, 184 F.Supp.2d 1342, 1351 (N.D. Ga. 2002)) (internal quotation marks omitted). While the FLSA's remedial goals do not alone justify certification of a collective action, they do "at least suggest that a close call as to whether Plaintiffs are similarly situated should be resolved in favor of certification." *Id.* Balancing all concerns of the third factor, the court concludes that a collective action would best serve the goals of fairness and procedural efficiency.

District courts retain significant discretion to manage collective action cases in a manner that promotes justice and judicial economy. *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 721 (E.D. La. 2008) ("A district court has significant discretion to fashion the appropriate procedures in collective actions brought under § 216(b)."). The court can "consider bifurcation of the case into a liability stage, where the parties could address the alleged existence of an impermissible policy or practice, and a damages one, where they could, if necessary, debate the impact of that policy or practice on individual plaintiffs." *Rikard v. U.S. Auto Prot., LLC*, 2013 WL 5532688, at *3 (E.D. Mo. Oct. 4, 2013) (quoting *Wilks v. Pep Boys*, 2006 WL 2821700, at *7 (M.D. Tenn. Sept. 26, 2006)) (internal quotation marks omitted); *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) ("Bifurcation would not eliminate variance in damages across class members, but once

liability is established damages claims can usually be settled with the aid of a special master, and trials thus avoided.") (collecting cases); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) (holding that district court abused its discretion in decertifying collective action where bifurcation was available); *White,* 2013 WL 5874566, at *7 (granting motion for bifurcation to separately determine liability and damages).[6]

---

[6]The Tenth Circuit in *Thiessen* detailed how bifurcated consolidated actions typically proceed:

> During the first stage of trial, the plaintiffs' burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. Thus, [a]t the initial, liability stage of a pattern-or-practice suit the [plaintiffs are] not required to offer evidence that each person for whom [they] will ultimately seek relief was a victim of the employer's discriminatory policy. Instead, plaintiffs' burden is to establish that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the [plaintiffs'] proof is either inaccurate or insignificant. If an employer fails to rebut the inference that arises from the [plaintiffs'] prima facie case, the finder of fact can conclude that a violation has occurred and the trial court can award prospective equitable relief. If the plaintiffs also seek individual relief for the victims of the discriminatory practice, the case moves into the second or subsequent stages. In these additional proceedings, it must be determined whether each individual plaintiff was a victim of the discriminatory practice. Importantly, by having prevailed in the first stage of trial, the individual plaintiffs reap a significant advantage for purposes of the second stage: they are entitled to a presumption that the employer had discriminated against them. The court may also divide the action into subclasses so that the legal interests and factual bases more perfectly align.

*Thiessen*, 267 F.3d at 1106 (citations and internal quotation marks omitted).

Defendants heavily rely on *Espenscheid* to argue that the court will be overwhelmed because damages will vary from plaintiff to plaintiff based on the specific projects and compensation systems involved. This reliance is misplaced. *Espenscheid* involved 2,341 technicians suing to recover unpaid overtime resulting from a payment-by-the-job compensation structure. *See Espenscheid*, 705 F.3d at 772. The primary question on appeal was whether 42 of the technicians could testify as "representatives" of the class to determine damages. *Id.* at 774. The court concluded that it would be highly improbable that the representatives would actually be representative of all 2,341 technicians because the jobs and efficiency of each technician varied so widely. *Id.* The court also recognized that the calculation of individualized damages, including examining evidence for hours actually worked, would likely require 2,341 separate hearings. *Id.* at 775. The court did note, however, that in cases like this, "where it is class treatment or nothing, the district court must carefully explore the possible ways of overcoming problems in calculating individual damages," including bifurcation or use of a special master. *Id.* at 776. Ultimately, it concluded that the district court had no reasonable way to overcome the problems. *Id.*

The problems the court faces here do not come close to those addressed in *Espenscheid*. At most, this court would need to hold 72 separate hearings on damages, but this could be handled in a bifurcated phase by a special master.

The court thus concludes that the remedial goals of the FLSA, along with other fairness concerns, support continuing this case as a collective action.

* * *

For the reasons explained, defendants' motion to decertify the collective action is denied, and their motion to supplement their motion to decertify is denied as moot.

**SO ORDERED**.

November 9, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE